# EXHIBIT A

| RETURN DATE: NOVEMBER 6, 2018 | : | SUPERIOR COURT |
| --- | --- | --- |
| | : | |
| LYNN OLESKI | : | J.D. OF NEW HAVEN AT |
| | : | NEW HAVEN |
| VS. | : | |
| | : | |
| NORWALK HOSPITAL | : | OCTOBER 2, 2018 |

## COMPLAINT

### I. Identification of Parties and Jurisdictional Allegations Applicable to All Counts

1. The plaintiff Lynn Oleski is a resident of 145 Maplewood Avenue, Milford, CT 06460

2. The defendant Norwalk Hospital has principal place of business located at 34 Maple Street, Norwlk, CT 06850.

3. Prior to filing this action against the defendant Norwalk Hospital, the plaintiff exhausted her administrative remedies before the Connecticut Commission on Human Rights and Opportunities and she obtained a release of jurisdiction and right to sue notification from the CHRO on July 17, 2018. The plaintiff filed her original complaint against Norwalk Hospital with the CHRO on or about August 17, 2017. She filed an amended complaint against Norwalk Hospital with the CHRO on or about March 14, 2018.

### First Count – Sex Discrimination in violation of Conn. Gen. Stats. Sec. 46a-60(a)(1) against Norwalk Hospital

4. The plaintiff was an employee of the defendant Norwalk Hospital, working as a paramedic until her wrongful termination from her position on or about October 3, 2017.

5. During the time that the plaintiff worked for Norwalk Hospital as a paramedic, she was an "employee" of Norwalk Hospital, and Norwalk Hospital was her "employer" as those terms are defined in all relevant statutes.

6. In her position as a paramedic, the plaintiff was assigned to work out of satellite facilities in Fairfield county at municipal EMS service centers including the defendant Town of Westport municipal EMS service facility.

7. On or about March 28, 2017, the plaintiff was assigned by Norwalk Hospital to work at the Westport EMS facility.

8. At that time and place, the plaintiff wanted to use the female bunk room and bathroom facility, but she could not do so because she was informed by a male employee of the Town of Westport that a female volunteer with Westport EMS, Caitlyn Fitzpatrick, was sharing a bed with a male employee of the Town of Westport, Kevin Doherty, who was

also an employee of Norwalk Hospital as an EMT, but working for the Town of Westport at the time.

9. On information and belief, Doherty was the Youth Corps Advisor for Westport EMS at the time of the alleged sexual incident with Fitzpatrick.

10. At that time, a fellow Norwalk Hospital employee, crew chief Eric Hebert who was working as an employee of Westport EMS at the time, told the plaintiff that a Westport Police Department employee had opened the door and made the observation of the two Westport EMS workers sharing a bed. Based on the information reported to the plaintiff she reasonably believed that the two individuals were engaged in some form of inappropriate sexual conduct at that time and that she could not disturb them.

11. After being unable to use the bunk room and bathroom facilities, the plaintiff notified a friend, Beth Low, a fellow hospital employee, via text message about her inability to use the bunk room and bathroom. Thereafter, word spread through the facility regarding the alleged activities of Doherty and Fitzpatrick.

12. Shortly after, Hebert confronted the plaintiff about the incident, and in defense of Fitzpatrick and Doherty said to the plaintiff "you better keep your fucking mouth shut," about what the plaintiff had been told regarding Fitzpatrick and Doherty.

13. Following that upsetting episode, the plaintiff's supervisor at Norwalk Hospital, Matt Soicher called her into his office on March 29 and warned her that if she complained to human resources about the incident, "its going to make your job worse." Soicher also told the plaintiff "you're going to be the scapegoat."

14. At the end of the meeting with Mr. Soicher, Soicher told the plaintiff that she would not be allowed to work out of any satellite municipal facilities, including the Westport facility, "until this all cools down," implying that the plaintiff was at fault for the sexual conduct of co-workers and for reporting it.

15. These statements by Hebert and Soicher were intended to intimidate and did intimidate the plaintiff from pursuing a complaint about the inappropriate sexual behavior that she was aware of.

16. Thereafter, Doherty made lewd references to the plaintiff by using sour cream to simulate semen drooling out of a female worker's mouth. This was intended to humiliate the plaintiff and it did humiliate her and make her feel ashamed and uncomfortable.

17. Thereafter, the plaintiff was prohibited by Norwalk Hospital from working at the satellite facilities for a period of ninety days.

18. All of the actions on the part of Norwalk Hospital personnel as set forth above created a hostile working environment for the plaintiff because of sex.

2

19. Subsequently, the plaintiff suffered an injury to her wrist while on the job, and was denied workers compensation benefits including light duty by the defendant Norwalk Hospital, although light duty was made available to at least one male employee during the time that it was denied to the plaintiff.

20. Since then, the plaintiff had been subjected to scrutiny and unwarranted discipline as a result of the complaint she made about Doherty and Fitzpatrick.

21. The harassment of the plaintiff continued unabated and was ongoing. On August 29, 2017, just twelve days after filing her original CHRO complaint, the plaintiff was suspended by Norwalk Hospital for 90 days from working in any satellite offices because she charged her narcotics key. No other employee had been suspended for such a long period of time for charging a narcotics key.

22. Thereafter, the plaintiff was suspended again from all work, with pay, on September 25, 2017 as a result of an incident where a fellow employee abandoned a patient and threatened the plaintiff.

23. On or about October 3, 2017, the plaintiff was terminated from her employment by Norwalk Hospital.

24. The defendant Norwalk Hospital's termination of the plaintiff's employment was an act of discrimination by the defendant Norwalk Hospital against the plaintiff on the basis of the plaintiff's sex in violation of Conn. Gen. Stats. Sec. 46a-60(a)(1).

25. As a result of the discriminatory conduct of the defendant Norwalk Hospital as alleged the plaintiff suffered monetary damages, emotional distress, and costs and fees including attorney's fees, and she makes claim for monetary compensation.

## Second Count – Age Discrimination in violation of Conn. Gen. Stats. Sec. 46a-60(a)(1) against Norwalk Hospital

1-23. Paragraphs one through 23 of the First Count are made a part of this the Second Count as if fully set forth herein.

24. At the time of her termination, the plaintiff was 53 years old.

25. The plaintiff's age (53) was a substantial causative factor in the defendant Norwalk Hospital's harassment and retaliation of the plaintiff because the individuals involved in the sexual conduct, and those who defended them, are younger than the plaintiff, and the plaintiff was viewed as prudish and old in refusing to condone such behavior. Ultimately these discriminatory factors led to the plaintiff's termination. This is a violation of Conn. Gen. Stats. Sec. 46a-60(a)(1).

26. As a result of the discriminatory conduct of the defendant Norwalk Hospital as alleged the plaintiff suffered monetary damages, emotional distress, and costs and fees including attorney's fees, and she makes claim for monetary compensation.

### Third Count – Retaliation in violation of Conn. Gen. Stats. Sec. 46a-60(a)(4) against Norwalk Hospital

1-18. Paragraphs one through 18 of the First Count are made a part of this the Third Count as if fully set forth herein.

19-22. Paragraphs 20 through 23 of the First Count are made a part of this the Third Count as if fully set forth herein.

23. The defendant Norwalk Hospital removed the plaintiff from work at the satellite facilities, suspended her, and ultimately terminated her because she complained about improper sexual conduct by co-workers, and because she complained about her exposure to a sexually-charged and harassing hostile work environment, and because she complained about the harassing, retaliatory and discriminatory conduct of her employer and its agents and employees to the CHRO. This was a violation by the defendant Norwalk Hospital of Conn. Gen. Stats. Sec. 46a-60(a)(4).

24. As a result of the discriminatory conduct of the defendant Norwalk Hospital as alleged the plaintiff suffered monetary damages, emotional distress, and costs and fees including attorney's fees, and she makes claim for monetary compensation.

### Fourth Count – Sexual Harassment / Hostile Work Environment in violation of Conn. Gen. Stats. Sec. 46a-60(a)(8) against Norwalk Hospital

1-22. Paragraphs one through 22 of the Third Count are made a part of this the Fourth Count as if fully set forth herein.

23. The actions and conduct of Soicher, the plaintiff's co-workers at Norwalk Hospital and the Westport EMS were designed and intended and had the purpose and effect of substantially interfering with the plaintiff's work performance, and creating an intimidating, hostile, and offensive work environment on the basis of sex in violation of Conn. Gen. Stats. Sec. 46a-60(a)(8).

24. As a result of the discriminatory conduct of the defendant Norwalk Hospital as alleged the plaintiff suffered monetary damages, emotional distress, and costs and fees including attorney's fees, and she makes claim for monetary compensation.

### Fifth Count – Violation of Conn. Gen. Stats. Sec. 31-51q against Norwalk Hospital

1. The plaintiff Lynn Oleski is a resident of 145 Maplewood Avenue, Milford, CT 06460

2. The defendant Norwalk Hospital has principal place of business located at 34 Maple Street, Norwlk, CT 06850.

3. On or about August 7, 2017, the plaintiff filed Petition Number 2017-55 with the State of Connecticut Department of Public Health Office of Emergency Medical Services alleging that Westport EMS Deputy Director Marc Hartoag had illegally gone into a computer system to alter a medical record prepared by the plaintiff relative to a drowning incident that occurred at Sherwood Island State Park on July 31, 2016.

4. After the plaintiff became aware that Hartoag had tampered and modified her medical record, she reported the incident to Hebert in his role as Quality Control director for Westport EMS. The plaintiff also reported the incident to Matt Soicher.

5. Neither Soicher, Hebert, Westport EMS, nor Norwalk Hospital took any action to ensure compliance with the law or to discipline Hartoag for wrongfully tampering with the medical record.

6. After the complaint had been filed with the Department of Public Health on August 7, 2017, but before she was terminated from employment on October 3, 2017, the plaintiff was called into a meeting with Norwalk Hospital personnel including James Brubaker, EMS Clincial Coordinator for Norwalk Hospital, and Anthony Mio, the Director of Internal Audit, Compliance and Privacy for Western Connecticut Health Network, as a result of a review by Soicher and Brubaker, to question her about the printing of the medical record that was sent to the DPH as part of her complaint. The meeting was intended by Norwalk Hospital representatives to ambush the plaintiff because it believed that the plaintiff had wrongfully and illegally printed the medical record that supported the DPH complaint, even though Soicher already knew why the record had been printed given his knowledge of the underlying incident. At the time of the meeting with the plaintiff, Brubaker claimed to have no prior knowledge of the tampering, even though Hebert and Soicher were aware of the issue.

7. In her complaint to DPH, the plaintiff alleged that Hartoag, a Westport EMS director, had re-opened her chart, and changed the wording in the chart. Hartoag told the plaintiff not to talk about the issue with her EMS coordinator, or her QI director, under threat of losing her job. Hartoag said, "All I have to do is make one phone call to Matt [Soicher] and he will no longer have you working here [at Westport EMS]."

8. Hartoag admitted to Hebert that he had made the change in the record, yet Hebert did not take any disciplinary action against Hartoag, nor report the incident to Norwalk Hospital.

9. After Soicher was made aware of the tampering, no action was taken against any of the personnel involved in the tampering incident. However, the plaintiff subsequently became the target of additional harassment and targeting ultimately leading to her termination from employment.

10. The plaintiff was terminated from her employment by Norwalk Hospital in violation of Conn. Gen. Stats. Sec. 31-51q because she exercised her state and federal constitutional rights to freely speak out on a matter of a public concern, namely the tampering with a medical record by a quasi-public agency (Westport EMS), and a community medical provider (Norwalk Hospital), and provided that information to a public agency, DPH, in furtherance of its public goals of transparency and public health and safety.

11. The plaintiff's speech neither substantially nor materially interfered with her bona fide job performance, (in fact her speech supported her job function), nor her working relationship with her employer, indeed because she was expected to report such misconduct to the proper authorities in furtherance of her employer's public health commitments and goals.

12. As a result of the retaliatory and discriminatory conduct of the defendant Norwalk Hospital as alleged the plaintiff suffered monetary damages, emotional distress, and costs and fees including attorney's fees, and she makes claim for monetary compensation, as well as punitive damages as allowed by law.

**Wherefore, the plaintiff claims as to each count:**

1. Monetary damages for economic and non-economic losses including but not limited to back pay, front pay, and emotional distress and suffering;
2. Attorney's fees and costs;
3. Compensatory damages
4. Make whole monetary relief
5. Any such other remedy as allowed by law.

**As to the Fifth Count**

1. Punitive damages in addition to all remedies claimed as to each count.

                THE PLAINTIFF
                LYNN OLESKI

/s/ 408630
By: Eric R. Brown, Esq.
Law Office of Eric R. Brown
P.O. Box 615
Watertown, CT 06795
eric@thelaborlawyer.com
888-579-4222 (phone and fax)
Juris No.: 408630

| | | |
|---|---|---|
| RETURN DATE: NOVEMBER 6, 2018 | : | SUPERIOR COURT |
| | : | |
| LYNN OLESKI | : | J.D. OF NEW HAVEN AT |
| | : | NEW HAVEN |
| VS. | : | |
| | : | |
| NORWALK HOSPITAL | : | OCTOBER 2, 2018 |

## STATEMENT OF AMOUNT IN DEMAND

The Plaintiff asserts that the amount, legal interest or property in demand is fifteen thousand dollars or more, exclusive of interest and costs.

                THE PLAINTIFF
                LYNN OLESKI

                /s/ 408630
                By: Eric R. Brown, Esq.
                Law Office of Eric R. Brown
                P.O. Box 615
                Watertown, CT 06795
                eric@thelaborlawyer.com
                888-579-4222 (phone and fax)
                Juris No.: 408630